IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

JAMES ROSCOE WINDHAM,          )
#286105,                       )
                               )
          Petitioner,          )
                               )          CIVIL NO. 1:15-cv-145-MHT
     v.                        )
                               )
CARTER DAVENPORT, et al.,      )
                               )
          Respondents.         )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Petitioner James Roscoe Windham ("Windham"), an inmate of the Alabama Department of Corrections, filed this petition for habeas corpus relief pursuant to 28 U.S.C. § 2254, challenging his conviction and sentence in the Circuit Court for Houston County, Alabama, on four counts of sex abuse of a child under twelve years of age.  Doc. No. 1. For the following reasons, the court recommends that the petition be denied and the case dismissed.

## I. PROCEDURAL HISTORY

A jury convicted Windham of four counts of engaging in sexual contact with two victims under the age of twelve, his stepdaughters.  Doc. No. 17-10, at 1.  Windham was sentenced to four consecutive terms of twenty years in prison. *Id.* He appealed, and the Alabama Court of Criminal Appeals affirmed the judgment on June 7, 2013.  *Id.*  His application for rehearing was overruled. Doc. Nos. 17-11, 17-12.  Windham unsuccessfully

petitioned for a writ of certiorari to the Alabama Supreme Court, and a certificate of judgment issued on August 16, 2013.  Doc. Nos. 17-13, 17-14, 17-15.

Windham sought postconviction relief under Alabama Rule of Criminal Procedure 32.  Doc. No. 17-16.  He sought leave to proceed in forma pauperis.  Doc. No. 17-16, at 10-12.  Under Alabama procedures, a Rule 32 petitioner who is seeking permission to proceed in forma pauperis must also submit, and the circuit court may consider, a certificate from the inmate's institution stating the amount of money or securities on deposit to the petitioner's credit in any account in the institution for the previous twelve months.[1]  Ala. R. Crim. P. 32.6(a).  This method has been called the "look back" or "could have saved" rule.  *Ex parte Cook*, 202 So. 3d 316, 322 (Ala. 2016) (Moore, C.J., concurring in part and dissenting in part).  Windham submitted a certificate of his inmate account, showing deposits over twelve months of $1190.00.  Doc. No. 17-16, at 12.

The Circuit Court denied Windham's request to proceed in forma pauperis, ruling that Windham could pay the $266.00 docket fee because he had deposits to his prison

---

[1] Requests to proceed in forma pauperis under Rule 32 are governed by Alabama Rule of Criminal Procedure 32.6(a), which provides, in relevant part, that a petition to proceed in forma pauperis

> shall also be accompanied by a certificate of the warden or other appropriate officer of the institution in which the petitioner is confined, stating the amount of money or securities on deposit to the petitioner's credit in any account in the institution for the previous twelve (12) months, which certificate may be considered by the court in acting upon the petitioner's application for leave to proceed in forma pauperis. If the application to proceed in forma pauperis is granted, the filing fee shall initially be waived, but may be assessed as provided in Rule 32.7(e). Upon receipt of the petition and the filing fee, or an order granting leave to the petitioner to proceed in forma pauperis, the clerk shall file the petition and promptly send a copy to the district attorney (or, in the case of a petition filed in the municipal court, to the municipal prosecutor).

Ala. R. Crim. P. 32.6(a); *see Ex parte Wyre*, 74 So.3d 479, 481 (Ala. Crim. App. 2011) (where inmate trust account had deposits of almost $880 in the 12 months before Rule 32 filing, inmate could afford the filing fee and was not indigent).  Rule 32.7(e), in turn, permits a court to assess the filing fee if "the court finds that all the claims for relief are precluded for any of the reasons stated in Rule 32.2, are lacking in specificity as required by Rule 32.6(b), or fail to state a claim of law or fact that is meritorious," and the fee is then collected in installments from the petitioner's institution.  Ala. R. Crim. P. 32.7(e).

account over the previous year totaling $1190.00 Doc. No. 17-17, at 2.  The court cited *Ex parte Wyre*, 74 So.3d 479 (Ala. Crim. App. 2011), as authority for its ruling.  *Id.*  Windham paid the docket fee.  Doc. No. 17-21.  On September 11, 2014, the Circuit Court denied Windham's Rule 32 petition, and on September 19, 2014, it denied his subsequent motion to supplement it.  Doc. Nos. 17-18, 17-19, 17-20.

Windham appealed the denial of postconviction relief.  Doc. No. 17-21.  He sought permission to proceed on appeal in forma pauperis.  Doc. No. 17-22.  Alabama Rule of Appellate Procedure 24(a)[2] governs leave to proceed in forma pauperis for appeals, and it direct appellants to comply with Form 15 in the Appendix of Forms.  Ala. R. App. P. 24(a). Question 2 on Form 15 asks, "Have you received within the past twelve months any income from a business, profession or other form of self-employment, or in the form of rent payments, interest, dividends, or other source?" and, if the answer is yes, directs the petitioner to "state the amount received from each during the past twelve months."  Ala. R. App. P. 24(a); Ala. R. App. P. Form 15.  If the trial court denies a request to proceed in forma pauperis on appeal:

> A motion for leave so to proceed may be filed in the appellate court within
> 28 days (4 weeks) after service of notice of the action of the trial court. The

[2] Rule 32 provides that appeals follow the Alabama Rules of Appellate Procedure.  Ala. R. Crim. P. 32.10(a).  The appellate rules provide for leave to proceed in forma pauperis under Alabama Rule of Appellate Procedure 24(a), which provides in relevant part:

> A party to an action in a court who desires to proceed on appeal in forma pauperis shall file in the trial court a motion for leave so to proceed, together with an affidavit showing, in the detail prescribed by Form 15 of the Appendix of Forms, the party's inability to pay fees and costs or to give security therefor, the party's belief that he or she is entitled to redress, and a statement of the issues which the party intends to present on appeal. If the motion is granted, the party may proceed without further application to the appellate court and without prepayment of fees or costs in either court or the giving of security therefor. If the motion is denied, the trial court shall state in writing the reasons for the denial.

Ala. R. App. P. 24(a).

motion shall be accompanied by a copy of the affidavit filed in the trial court, or by the affidavit prescribed by the first paragraph of this subdivision if no affidavit has been filed in the trial court, and by a copy of the statement of reasons given by the trial court for its action.

Ala. R. App. P. 24(a).[3]

Along with his application to proceed in forma pauperis on appeal, Windham provided a statement of his inmate accounting showing gross deposits over the previous year of $1435.00, an average monthly balance of $12.87, and an average balance on September 30, 2014, of $14.35. Doc. No. 17-22, at 7. He stated he relied on his family for money, and "his mother lives pay-check to paycheck. Which brings about the problem of paying the complete $200 filing fee at one time." *Id.* at 2. The Court of Criminal Appeals directed the Circuit Court to rule on the in forma pauperis application, and the Circuit Court denied Windham's request to proceed in forma pauperis that same day, October 9, 2014. Doc. Nos. 17-23, 17-24. In particular, the Circuit Court ruled that Windham did not comply with Alabama Rule of Appellate Procedure 24, "and all available evidence indicates that he either has, or if he chooses, has ready access to $200.00." Doc. No 17-24, at 2. Windham asked for reconsideration, and on October 29, 2014, the Circuit Court again denied Windham's request to proceed in forma pauperis. Doc. Nos. 17-25, 17-26, 17-27. The Circuit Court stated:

---

[3] "Rule 24(a), Ala. R. App. P., only applies when a person is seeking to proceed on appeal in forma pauperis. It does not apply to the initial filing of a request for indigency status in the circuit court." *James v. State*, 61 So. 3d 357, 383 (Ala. Crim. App. 2010) (explaining that petitioner erroneously relied on Rule 24(a) to contest ruling denying in forma pauperis status for initial Rule 32 petition; and recognizing that mandamus, not appeal, is the proper method to challenge request to proceed in forma pauperis for the initial Rule 32 proceeding); *see also Wyre*, 74 So. 3d at 482 (relying on *James*).

> Nothing of substance has changed. The defendant has not explained how he was able less than two months ago to pay $266.00 for the Rule 32 but is unable to pay the $200.00 appeal fee.  In the past year he has had $1435.00 in his prison account.   Rule 24 does not allow partial payment or future payment as is permitted for Rule 32 fees . . . .  Accordingly, motion to reconsider is DENIED.  Clerk shall send this order to the Court of Criminal Appeals.

Doc. No. 17-27, at 2.

On November 19, 2014, the Court of Criminal Appeals dismissed Windham's postconviction appeal because he failed to pay the docket fee prescribed in Alabama Rule of Appellate Procedure 35A(b). Doc. No. 17-28, at 2-3.  Two days later, on November 21, 2014, it recalled the judgment.  Doc. No. 17-29.

On December 2, 2014, the Court of Criminal Appeals denied Windham's motion to proceed in forma pauperis on appeal.[4]  Doc. No. 17-28, at 4.  It directed him to pay the $200.00 docket fee by December 16, 2014.  *Id.*

On about December 11, 2014, Windham filed a petition for writ of mandamus[5] with the Alabama Supreme Court, asking it to direct the Court of Criminal Appeals to grant him in forma pauperis status or allow him to pay the docket fee in installments.  Doc. No. 17-30, at 4.  Windham stated his mother loaned him $266.00 for the Rule 32 filing fee, and he could not get another loan for the $200.00 appellate filing fee so soon.  *Id.* at 3. He stated

---

[4] The state court record in this habeas action does not include an appeal or motion to proceed in forma pauperis by Windham to the Court of Criminal Appeals regarding the motion to proceed in forma pauperis.

[5] In the context of an initial Rule 32 petition in a circuit court, "mandamus, and not appeal, is the proper method by which to compel the circuit court to proceed on an in forma pauperis petition." *Goldsmith v. State*, 709 So.2d 1352, 1353 (Ala. Crim. App. 1997); *see also Ex parte* Wyre, 74 So.3d 479, 480 (Ala. Crim. App. 2011) ("A petition for a writ of mandamus is the appropriate vehicle for reviewing a lower court's ruling denying a request to proceed in forma pauperis") (citing *Goldsmith*).   A request to proceed in forma pauperis on appeal, however, is governed by Ala. R. App. P. 24(a).  *See Wyre*, 74 So3d at 482.

Alabama Code prohibits the court from using money from friends and relatives to determine his indigency, and he stated that "as in *Hurth v. State*, 764 So.2d 1272, imposing a filing fee on a [sic] indigent petitioner effectively forecloses his access to the courts and was a denial of equal protection." *Id.* at 4. The Alabama Supreme Court granted Windham leave to proceed in forma pauperis on the mandamus action on December 30, 2014.  Doc. No. 17-31. On January 28, 2015, the Alabama Supreme Court issued a one-sentence order stating, "The petition of James R. Windham for a writ of mandamus directed to the Alabama Court of Criminal Appeals, having been filed and submitted to the Court, IT IS ORDERED that the petition for writ of mandamus is denied." Doc. No. 17-32.

On February 3, 2015, the Court of Criminal Appeals again dismissed Windham's postconviction appeal because he failed to pay the docket fee as required by Alabama Rule of Appellate Procedure 35A(b).  It stated:

> More than 14 days have passed since this Court issued an order in the above-referenced cause allowing the appellant 14 days to pay the docket fee prescribed in Rule 35(A)(b) of the Alabama Rules of Appellate Procedure or to provide proof that he/she had been granted leave to proceed in forma pauperis or has a motion pending with the trial court seeking leave to proceed on appeal in forma pauperis.  In said order, the appellant was placed on notice that his/her failure to comply within the allotted time would result in this appeal being dismissed with prejudice.

The Court of Criminal Appeals ruled that Windham failed to comply with the court's order within time granted and "failed to show good cause for such failure," and it issued the certificate of judgment.  Doc. No. 17-33.  Windham did not seek rehearing before the Court of Appeals or further review before the Alabama Supreme Court of the dismissal by the Court of Criminal Appeals.

## II. HABEAS PETITION

A little over two weeks later, Windham filed this § 2254 petition. *See Houston v. Lack*, 487 U.S. 266, 271-72 (1988) (discussing the "mailbox rule"); Rule 3(d) of the Rules Governing Section 2254 Cases in the U.S. District Courts (incorporating the mailbox rule for habeas petitions); Doc. No. 1, at 29.  He supplemented his petition with two claims, but his second claim in the supplement substantially duplicates or relates back to a claim in his original petition.  Doc. No. 11.  Windham raises a total of thirteen claims for habeas relief:

1. The sentencing court erroneously amended Windham's sentences to be consecutive, not concurrent. Doc. No. 1, at 7.
2. The prosecutor failed to disclose evidence favorable to Windham and make available to Windham a copy of the forensic video, and Windham's counsel failed to appeal the issue.  *Id.* at 15; Doc. No. 11, at 3.
3. Windham's conviction was based on evidence obtained through an unreasonable search and seizure.  Doc. No. 1, at 20.
4. Counsel failed to preserve a claim that the trial court erroneously removed a juror without just cause. *Id.* at 23.
5. Counsel failed to object to consolidation of charges for trial.  *Id.* at 30.
6. Counsel failed to challenge admission of Rule 404(b) evidence that Windham raped a victim.  *Id.* at 35.
7. Counsel failed to call Dr. Mark J. McDonald as a witness.  *Id.* at 38.
8. Counsel failed to call Nurse Michelle Powell as a witness.  *Id.* at 39.
9. Counsel failed to call Ashley Skinner as a witness and to request videos of Skinner's interview.  *Id.* at 40.
10. Counsel failed to protect Windham from attacks on his character and from irrelevant, damaging testimony.  *Id.* at 41.
11. Counsel failed to object when the trial court prematurely charged the jury when, after the state rested, it selected which events were the basis for the four charges.  *Id.* at 44.
12. Counsel failed to file motion for preliminary hearing and labored under a conflict of interest before new counsel was appointed.  *Id.* at 45.
13. Counsel failed to conduct a pretrial investigation into the victims' school records and failed to call witnesses to testify about incidents at school and facts that would explain the victims' behavior. Doc. No. 11, at 1-2.

Respondents admit that Windham's petition was timely filed. Doc. No. 17, at 11. Respondents argue that Windham preserved for federal review only two claims—regarding his consecutive sentences and removal of a juror—and those claims fail on the merits under § 2254. *Id.* at 15-17. Respondents argue Windham's remaining claims are unexhausted and Alabama procedural rules preclude him from returning to state court. *Id.* at 14. Respondents further argue that Windham does not show cause and prejudice for the default or a fundamental miscarriage of justice would result if this court does not review his procedurally defaulted claims. *Id.* at 15.

The court entered an order advising Windham of the constraints that 28 U.S.C. § 2254(d) places on federal courts to grant relief, including procedural default of federal claims, as well as the ways to overcome default. Doc. No. 18. Windham responded. Doc. No. 22. After reviewing the § 2254 petition, Respondents' answer and the other filings, the state court record, and applicable federal law, the court concludes that no evidentiary hearing is required, and the petition is due to be denied in accordance with the provisions of Rule 8(a), Rules Governing Section 2254 Cases in United States District Courts.

### III. EXHAUSTION AND PROCEDURAL DEFAULT

Respondents argue that Windham's claims raised in his Rule 32 postconviction proceedings are unexhausted and procedurally defaulted without excuse. Doc. No. 17, at 5-6. They assert Windham failed to exhaust the claims he raised in his state postconviction action "when he failed to perfect his appeal by failing to pay the docket fee resulting in the dismissal of his appeal." *Id.* at 13 (initial capitalization of words removed). Windham, they argue, "cannot seek further consideration of his habeas claims in the state courts

because any subsequent petition for post-conviction relief would be successive, time-barred, and/or procedurally barred.  Rules 32.2(a), (b), and (c), Ala. R. Crim. P." *Id.* at 14. Respondents conclude that because Windham did not exhaust the claims, and "because he cannot return to state court for further review, the exhaustion and preclusion rules coalesce into procedural default of his claims." *Id.* at 15.  Respondents argue that Windham makes no attempt to excuse his default.  *Id.*

Windham responds that he told the state court his mother loaned him the money for the $266.00 Rule 32 petition docket fee, and he did not have enough time to accumulate money in his inmate account to pay the $222.00 appellate docket fee. Doc. No 22, at 10-11. Windham argues the state court's failure to grant him indigent status on appeal denied him his right of access to the courts and was contrary to United States Supreme Court caselaw.  *Id.* at 11-12. Thus, Windham argues, the state itself prevented Windham from exhausting his state court remedies, and he should be excused for any failure to exhaust and procedural default. Windham asks this court to excuse his failure to exhaust and procedural default or to order the Alabama Court of Criminal Appeals to grant Windham leave to proceed in forma pauperis on his state court appeal.  *Id.* at 11-12.

## A. Exhaustion and Default Principles

The procedural default doctrine is closely related to the exhaustion requirement in § 2254 cases. To preserve a federal claim for habeas review, principles of exhaustion require a petitioner to present the federal claim and facts supporting it to the state's highest court, either on direct appeal or on collateral appeal through postconviction proceedings. *See Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (holding exhaustion principles

apply to state postconviction proceedings as well as direct appeal).  A petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including review by the state's court of last resort, even if review in that court is discretionary.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Pruitt*, 348 F.3d at 1359.  In Alabama, this requires filing an appeal to the Court of Criminal Appeals, an application for rehearing, and a petition for discretionary review with the Alabama Supreme Court.  *See Pruitt*, 348 F.3d at 1359 (describing Alabama procedures for discretionary review); *Smith v. Jones*, 256 F.3d 1135, 1140 (11th Cir. 2001) ("Alabama's discretionary direct review procedures bring Alabama prisoner habeas petitions within the scope of the *Boerckel* rule.").  Doing so gives the state courts the first opportunity to apply controlling law to their case and petitioner's claim. *See Duncan v. Walker*, 533 U.S. 167, 179 (2001) ("The exhaustion rule promotes comity in that 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.'" (further quotation marks and citations omitted)).

Federal habeas review is also unavailable if the state court decision was made on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  The court "presume[s] that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" *Coleman*, 501 U.S. at 735 (quoting *Michigan v. Long*, 463

U.S. 1032, 1040-41 (1983)). In the rest of the cases, however, the court makes no such presumption. *Coleman*, 501 U.S. at 739.

If the last reasoned opinion "fairly appear[s] to rest primarily upon federal law," then the court presumes the subsequent order relies on federal law. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (citation omitted). Similarly, if the last reasoned order invoked procedural default, then the court "presume[s] that a later decision rejecting the claim did not silently disregard that bar and consider the merits." *Id.* (alteration added); *cf. Wilson v. Warden, Georgia Diagnostic Prison*, 834 F.3d 1227, 1235 (11th Cir. 2016) (en banc) (*Ylst* applies in context of procedural default, but "Federal Courts Need Not 'Look Through' a Summary Decision on the Merits to Review the Reasoning of the Lower State Court"), *cert. granted sub nom. Wilson v. Sellers*, 137 S. Ct. 1203 (2017); *and see Martinez v. Sec'y, Florida Dep't of Corr.*, No. 15-10116, 2017 WL 1325250, at *5 (11th Cir. Apr. 11, 2017) (unpublished) ("Prior to *Wilson*, other panels in this Circuit "looked through" a summary affirmance and reviewed "the last reasoned state court decision" to address the issue.").

If a state court plainly holds that a claim is barred under an adequate and independent state court ground, then this federal court may not review the claim even if the state court also rejected the federal claim on the merits in the alternative. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" when the adequate and independent state ground "is a sufficient basis for the state court's judgment"). To rely on a state court's procedural bar of a federal claim, three conditions must be met: (1) the last state court rendering a judgment in the case must clearly and expressly state that it is relying on state procedural

rules to resolve the federal claim without reaching the merits of that claim, (2) the state court decision must rest entirely on state law grounds and not be intertwined with an interpretation of federal law, and (3) the state procedural rule must be firmly established and regularly followed at the time it was applied. *Ward v. Hall*, 592 F.3d 1144, 1156-57 (11th Cir. 2010) (citations omitted); *see also id.* at 1156 n.5 (noting the caveat that, "'Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.'") (quoting *Ylst*, 501 U.S. at 803); *see Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural default is not an "independent and adequate state ground" barring subsequent federal review unless the state rule was "'firmly established and regularly followed'" at the time it was applied). To be adequate, the state rule "must not be applied in an arbitrary or unprecedented fashion. . . . [it] cannot be 'manifestly unfair' in its treatment of the petitioner's federal constitutional claim to be considered adequate for the purposes of the procedural default doctrine." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) (citation omitted).

If a petitioner did not present a claim to the highest state court but would now be unable to present the claim in state court because of a state procedural rule, for example, requirements on time limits for filing, such a petitioner "meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him." *Coleman*, 501 U.S. at 732. But the petitioner has "procedurally defaulted" the federal claim under an adequate and independent state rule, that is, the timely filing requirements. *See id.* at 750. Federal claims which have never been presented to a state court or claims which were not

exhausted properly in the state courts are procedurally defaulted if presentation of the claims in state court would be barred by firmly established and regularly followed state procedural rules.  *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) (where state court remedies are no longer available because petitioner failed to present claim on direct appeal or in state postconviction action, petitioner has procedurally defaulted on his claims and is generally barred from asserting claims in a federal habeas proceeding); *Coleman*, 501 U.S. at 735 n.1 ("[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[,] . . . there is a procedural default for purposes of federal habeas.") (citations omitted); *Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) (when petitioner fails to properly exhaust claims in state court and is barred from raising claims in state court by firmly established and regularly followed state procedural rules, such claims are procedurally defaulted).

This court may reach the merits of procedurally defaulted claims in two instances:

First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. *See Murray v. Carrier*, 477 U.S. 478, 485 (1986); *[Wainwright v.]* Sykes, 433 U.S. [72], 87 [(1977)]. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Id.*; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002). Second, a federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice. *Murray*, 477 U.S. at 495-96. A "fundamental miscarriage of justice" occurs in an extraordinary case, where a constitutional

> violation has resulted in the conviction of someone who is actually innocent.
> *Id.*

*Henderson*, 353 F.3d at 892; *see also Coleman*, 501 U.S. at 750.

## B.  Procedural Default of Federal Claims

Respondents argue that Windham failed to exhaust his federal claims of ineffective assistance of counsel because those "claims, even if presented in the Rule 32 petition, were not presented to the state courts after the denial of the petition because his Rule 32 appeal was dismissed for failure to pay the appeals court's docket fee."  Doc. No. 17, at 14. According to Respondents, Windham's failure to exhaust is based on his failure to pay the filing fee, resulting in the dismissal of his appeal.

The Court of Appeals granted Windham an opportunity to show good cause for his failure to comply with its order to pay the filing fee, and he did not.  Doc. No. 17-33, at 2. In addition, Windham also failed to exhaust his federal claims because he never sought rehearing before the Court of Criminal Appeals or further review before the Alabama Supreme Court of his federal claims after the Court of Criminal Appeals dismissed the appeal.  *See Pruitt*, 348 F.3d at 1358-59 (exhaustion requires presenting postconviction claims to the Alabama Supreme Court).  State procedural rules regarding timeliness and successive Rule 32 petitions and claims preclude him from returning to state court to obtain that review.  Alabama Rule of Criminal Procedure 32.2(a) precludes claims which were raised in previous collateral proceedings, Rule 32.2(b) precludes successive petitions, and Rule 32.2(c) sets a one-year deadline for most Rule 32 claims.  *See* Ala. R. Crim. P. 32(a), (b), (c).  These independent and adequate state procedural grounds are firmly established

and regularly followed by Alabama appellate courts. *E.g.*, *Tucker v. State*, 696 So.2d 1170, 1171-73 (Ala. Crim. App. 2006) (Rules 32.2(a)(3) and (a)(5) and 32.2(c)); *Horsley v. State*, 675 So. 2d 908, 909 (Ala. Crim. App. 1996) (Rules 32.2(a)(3) and (a)(5), 32.2(b), and 32.2(c)); *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006) (Rule 32.2(c)).

Windham asserts two arguments that address the procedural default defense regarding his Rule 32 claims. Doc. No. 22, at 9-12. First, he asserts the state court should have found him to be indigent, therefore the state court, itself, caused his default by refusing to grant him leave to proceed in forma pauperis on appeal. *Id.* at 10-11. The problem Windham faces with this argument is the state courts found that Windham was not, in fact, indigent, after giving Windham multiple opportunities to demonstrate that he was. The Alabama Supreme Court denied his petition for a writ of mandamus on the issue. Doc. No. 17-31. That factual finding is presumed to be correct unless Windham can rebut it by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *compare* 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."), *with* 28 U.S.C. § 2254(d)(2) (prohibiting federal courts from granting habeas relief unless "*adjudication of the claim* . . . resulted in a decision that was based on an *unreasonable determination of the facts in light of the evidence* presented in the State court proceeding") (emphases added)); *cf. Kearse v. Sec'y, Florida Dep't of Corr.*, 669 F.3d 1197, 1199 (11th Cir. 2011) ("The district court's § 2254(d) evaluation has no place in determining the timeliness of Kearse's petition, as the state court's conclusion that it was improperly filed in the first instance is a finding of fact—not 'adjudication of [a]

claim' under § 2254(d)."); *see id.* (giving federal petitioner opportunity to "present clear and convincing evidence to rebut the state court's factual finding that the" postconviction application was missing a required verification page); *see id.* ("*Gonzalez v. Crosby*, 545 U.S. 524, 530 (2005) (explaining that "claim" used elsewhere in habeas laws means "'an asserted federal basis for relief from a state court's judgment of conviction'").

The filing fee for Windham's appeal was $200. Doc. No. 17-27. Windham had deposits of $1435 in the twelve months before he filed his appeal. Doc. No. 17-25, at 8. Under Alabama law, judges have discretion to determine indigency, and their courts have upheld denials of in forma pauperis status in circumstances similar to Windham's, at least in initial rule 32 proceedings. In *Wyre*, the case relied on when Windham was denied in forma pauperis status, Doc. Nos. 17-17, 17-27, the inmate had total deposits of $876.52 in the twelve months before filing the Rule 32 petition, he had only $.28 in his inmate account when he filed, and the average balance over the last twelve months was $30.74. *Wyre*, 74 So.3d at 480-81; *see also State v. Thomas*, 137 So. 3d 933, 934 n.3 (Ala. Crim. App. 2012) (stating in dicta that circuit court could have denied Rule 32 in forma pauperis application because inmate had "deposited the sum of $657.14 in his inmate account in the 12 months preceding the filing of his application"). Windham asserts the trial court should not have relied on loans he received from his mother to determine his indigency, but the court could and did rely on the deposits in Windham's inmate's trust account, which were sufficient under state law to deny him in forma pauperis status. *Cf. Cook*, 202 So.3d at 321 (in ruling issued after Windham's case was decided, court did not consider assets of friends and relatives but rather relied only on the deposits of over $800 in the inmate's account over

the previous twelve months); *see also Kimber v. Jones*, 5:12-cv-2320-RDP-JEO, 2013 WL 1346742, at *7 (N.D. Ala. Feb. 22, 2013) ("It can be assumed that, as a prisoner, Kimber would generally have no significant expenses related to his own maintenance. Given that, in conjunction with considerations as to the amount of the filing fee at issue, $213.00; and the certified prison account statement showing deposits of $1,787.33, almost $150 per month on average, for the 12 months preceding his Rule 32 filing, he has failed to raise even a colorable claim that the state court's denial of his IFP was so arbitrary that it violated due process or equal protection.") (citation omitted), *report and recommendation adopted*, 2013 WL 1346730 (N.D. Ala., Apr. 03, 2013).

Second, Windham argues that the state courts refusal to grant him in forma pauperis status denied him his federal rights of access to the courts and equal protection. Doc. No. 22, at 11-12 (citing *Bounds v. Smith*, 430 U.S. 817 (1977); *Burns v. Ohio*, 360 U.S. 252 (1959); and *Smith v. Bennett*, 365 U.S. 708 (1961)). This argument does not address Windham's failure to seek rehearing or further review of his substantive Rule 32 claims after his appeal was dismissed for failure to pay the filing fee. If Windham means to argue that the "look back" procedure to determine indigency for Rule 32 appellants was not "adequate" because it violated his federal rights to access to the courts and equal protection, he did not sufficiently alert the Alabama Supreme Court to his federal constitutional argument. Based on the records before this court, the only time Windham referred to such a claim was in his petition for a writ of mandamus before the Alabama Supreme Court when he stated, "as in *Hurth v. State*, 764 So.2d 1272, imposing a filing fee on a [sic] indigent petitioner effectively forecloses his access to the courts and was a denial of equal

protection." Doc. No. 17-30, at 4. The case to which Windham referred concerned indigency for an initial Rule 32 petition, not an appeal, and it did not address the "look back" rule from *Wyre*, which was decided over ten years later, in 2011. *See Ex parte Hurth*, 764 So. 2d 1272, 1273 (Ala. 2000) (granting in forma pauperis where, "during the seven preceding months, his average monthly deposit had been only $23.57 and his average daily balance, calculated monthly, had never exceeded $14.47").

To be sure, some have called into question the constitutionality of Alabama's "look back" or "could have saved" approach from *Wyre* to determine whether to grant initial Rule 32 petitioners in forma pauperis status:

> Even in cases governed by Rules 32.6 and 32.7, Ala. R. Crim. P., however, the "look back" or "could have saved" rule articulated in *Wyre* raises troubling constitutional questions. The *Wyre* rule impedes a prisoner's access to the courts in possible violation of the Due Process Clause by weighing the interests of rich and poor criminals unequally. The *Wyre* rule also may violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *See also* Ala. Const.1901, Art. I, §§ 1, 6, 13, and 22, and *Ex parte Johnson*, 123 So.3d 953, 954 (Ala. 2013) (Moore, C.J., dissenting) ("'The Fourteenth Amendment weighs the interests of rich and poor criminals in equal scale.'" (quoting *Smith v. Bennett*, 365 U.S. 708, 714 (1961))).

*Ex parte Cook*, 202 So. 3d at 323 (Moore, C.J., concurring and dissenting). In April 2013, almost a year before Windham's mandamus petition was denied, Chief Justice Moore and Justice Murdock signaled their concern about the "look back" rule. *Ex parte Johnson*, 123 So. 3d at 953 (Murdock, J. concurring) ("I am concerned about the issues addressed by Chief Justice Moore in his dissent relating to the current procedure for determining whether an inmate should be granted in forma pauperis status. Because I do not believe these concerns are presented by the petition for certiorari review in this case, however, and seeing

no other ground for review properly presented in that petition, I concur in the decision to deny further review."); *see also Baker v. Alabama*, No. 5-15-cv-00847-CLS-HGD, 2017 WL 3205778, at *1 n.2 (N.D. Ala. May 3, 2017) (noting that "[t]o date, the constitutionality of this 'look-back' method of determining indigency in Alabama courts has not been ruled upon by the Eleventh Circuit Court of Appeals, though its constitutionality, if applied across the board, is certainly open to question"), *report and recommendation adopted*, 2017 WL 3191157 (N.D. Ala. July 27, 2017).

Whatever the federal constitutional questions of applying Alabama's "look back" rule to Rule 32 appellants, Windham did not alert the Alabama Supreme Court to them.  In the context of a petitioner seeking to use an ineffective-assistance-of-counsel claim as cause to excuse the procedural default of another habeas claim, the Supreme Court held the petitioner must also raise and properly preserve for federal review the ineffective-assistance claim. *See Edwards v. Carpenter*, 529 U.S. 446, 450-52 (2000).  The Supreme Court explained:

> In other words, ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim. And we held in *Carrier* that the principles of comity and federalism that underlie our longstanding exhaustion doctrine—then as now codified in the federal habeas statute, *see* 28 U.S.C. §§ 2254(b), (c)— require *that* constitutional claim, like others, to be first raised in state court.

*Id.* at 451-52.  The principles of comity and federalism underlying the exhaustion doctrine likewise require that the Alabama courts be the first to consider the federal constitutional questions regarding the procedures for determining whether Rule 32 appellants are indigent.  *Cf. id.* at 453 (the purposes of the exhaustion requirement "would be no less

frustrated were we to allow federal review to a prisoner who had *presented* his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it").   Windham makes no other argument to avoid the procedural default of his claims.   Consequently, Windham's Rule 32 claims are deemed procedurally defaulted without excuse and cannot be reviewed.

### IV. HABEAS REVIEW OF CLAIMS ON THE MERITS

Even assuming all of Windham's federal claims were preserved for review, he would not be entitled to federal habeas relief on any of them.   For claims properly before a federal court, a writ of habeas corpus shall be granted only if the prior adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). The Supreme Court has held that a state court decision is "contrary to" federal law under § 2254(d)(1) "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell*, 535 U.S. at 694. Under the "unreasonable application"

standard, this Court may grant a writ only if the state court identified the correct governing federal legal principle but applied that principle to the facts of a petitioner's case in an objectively unreasonable way.  *See Williams v. Taylor*, 529 U.S. 362, 411-13 (2000) (O'Connor, J., delivering the opinion of the Court with respect to Part II). "Objectively unreasonable" means something more than an "erroneous" or "incorrect" application of clearly established law, and a reviewing federal court may not substitute its judgment for the state court's even if the federal court, in its own independent judgment, disagrees with the state court's decision.  *See Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). The reviewing court "must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).  The Supreme Court recently reemphasized this deferential standard, saying "[t]he state court decision must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citation omitted).  "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).   As    for    the unreasonable determination of facts prong under § 2254(d)(2), the federal court "may not characterize these state-court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015) (citation omitted). "If [r]easonable minds reviewing the record might

disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's . . . determination." *Id.* (quotation marks and citations omitted).

Factual issues made by a state court are presumed correct, and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The Supreme Court has recognized there is a question about the relationship between § 2254(d)(2)'s "unreasonable determination of the facts" standard and § 2254(e)(1)'s presumption, but it has "not yet defined the precise relationship between [them.]" *Brumfield*, 135 S. Ct. at 2282 (quotation marks and citation omitted).  If a petitioner failed to develop the factual basis of a claim in state court, the federal court cannot hold an evidentiary hearing unless the petitioner shows "the claim relies on . . . a new rule of constitutional law, made retroactive . . . ; or . . . a factual predicate that could not have been previously discovered through the exercise of due diligence; and [] the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2). "Section 2254(e)(2) continues to have force where § 2254(d)(1) does not bar federal habeas relief." *Cullen*, 131 S. Ct. at 1401.

Except for certain kinds of error that require automatic reversal, even when a state petitioner's federal rights are violated "relief is appropriate only if the prosecution cannot demonstrate harmlessness." *Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015). "Harmlessness" in the context of § 2254 means "the federal court has 'grave doubt about whether a trial error of federal law had "substantial and injurious effect or influence in determining the jury's verdict."'" *Id.* at 2197-98 (citation omitted). This standard, which is taken from

*Brecht v. Abrahamson*, 507 U.S. 619 (1993), requires "more than a 'reasonable possibility' that the error was harmful." *Davis*, 135 S. Ct. at 2198 (quoting *Brecht*, 507 U.S. at 637); *cf. Chapman v. California*, 386 U.S. 18, 24 (1967) (standard for harmlessness on direct review from a state court to the U.S. Supreme Court is whether the error was "harmless beyond a reasonable doubt"). When a state court determines the harmlessness question, "the *Brecht* test subsumes the limitations imposed by AEDPA." *Davis*, 135 S. Ct. at 2199.

These strict limitations reflect that habeas relief is granted sparingly, reserved for "'extreme malfunctions in the state criminal justice systems'" and "not as a means of error correction." *Greene v. Fisher*, 132 S. Ct. 38, 43 (2011) (quoting *Harrington*, 131 S. Ct. at 786, and further quotation marks omitted). As the Supreme Court has reminded courts, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. . . . [Section 2254(d)] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther." *Harrington*, 131 S. Ct. at 786. Within that disciplined legal framework, the Court addresses Windham's claims.

### A. Claim 1—Consecutive Sentences

In Claim 1, Windham argues that the trial court erroneously sentenced him to consecutive sentences the day after it sentenced him to concurrent sentences. Respondents agree this claim is properly before the court, Doc. No. 17, at 16, but Respondents argue the claim does not merit relief under § 2254.

The prosecution asked for the maximum sentence and for "consecutive time on least two counts." Doc. No. 17-6, at 115. In sentencing Windham, the trial court said it was

"[a] very disturbing case.  I definitely agree with that.  So, with that, set punishment on each case at 20 years . . . ."  *Id.*  After the court pronounced the sentence, counsel for Windham gave oral notice of appeal.  *Id.* at 116.  The prosecutor then asked, "Was that concurrent, Judge?"  And the court said, "It's concurrent."  *Id.* Under Alabama law, sentences are consecutive unless the court indicates they are concurrent.  Ala. Code § 14-3-38(a).  The Sentencing Orders indicated the sentences were concurrent.  Doc. No. 1, at 8-11.  The next day, the trial court filed a one-sentence order stating "[t]he orders e-filed yesterday were e-filed incorrectly, defendant's sentences are to run consecutively, not concurrently."  *Id.* at 13.

On direct appeal, Windham argued, based on Alabama Rules of Criminal Procedure and Alabama caselaw, that the trial court lacked jurisdiction to revise his sentences to run consecutively after Windham gave oral notice of appeal and no posttrial motions were filed.  Doc. No. 17-7, at 35-37; Doc. No. 17-10, at 12-13.  The Alabama Court of Criminal Appeals ruled that, under Alabama law, "[t]he court retains jurisdiction, typically, to modify a sentence for 30 days after the sentence is pronounced."  Doc. No. 17-10, at 13 (citations to state court caselaw omitted).  In rejecting Windham's argument, the Court of Appeals cited Alabama caselaw and quoted the following language from an earlier Alabama case:

> "Although Rule 26.12(c), Ala. R. Crim. P., allows a sentencing court to 'at any time, by a nunc pro tunc order provide that previously imposed consecutive sentences run concurrently,' we find no such provision allowing for a trial court to, more than 30 days after sentence is pronounced, order that previously imposed concurrent sentences be served consecutively."

Doc. No. 17-10, at 13 (quoting *Stevenson v. State*, 75 So.3d 1215, 1219 (Ala. Crim. App. 2010) (footnote from *Stevenson* omitted).   The court in Windham's case reasoned, "because the trial court corrected the e-filed sentencing orders the day after pronouncing the sentences, the court did not act outside its jurisdiction." Doc. No. 17-10, at 13.

Windham argues the state court ruling denied him due process and equal protection of the law because there was no error to correct, because it occurred outside Windham's presence and without counsel, and because it quadrupled the severity of his sentence.  Doc. 1, at 7.  Respondents maintain the Court of Criminal Appeals correctly rejected Windham's claims, and Windham has not alleged or shown that the state decision was contrary to, or an unreasonably application of clearly established federal law, as determined by the United States Supreme Court, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in state court.  Doc. No. 17, at 16-17.

The court concludes that Windham's claim regarding his sentence is due to be denied. Windham makes only conclusory arguments that his sentence violated his federal rights.[6] Windham's claim in state court was based entirely on state law,[7] and neither

---

[6] The Supreme Court has held that denying a defendant an opportunity for allocution—a statement before the court pronounces sentence—is not "cognizable under a writ of habeas corpus"; it is not a constitutional or jurisdictional error; it is not "a fundamental defect which inherently results in a complete miscarriage of justice."  *Hill v. United States*, 368 U.S. 424, 428 (1962); *see also Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014) (quoting *Hill*, 368 U.S. at 428).  A defendant has a right to be present at critical stages of the criminal proceedings, including sentencing.  *See United States v. Tamayo*, 80 F.3d 1514, 1518 n.5, 1519 (11th Cir. 1996) (distinguishing allocution from presence at sentencing, and concluding that limited remand for "reconsideration or correction of a portion of a sentence can be remedied on remand, provided the modification does not make the sentence more onerous, but the whole sentencing process need not start anew").  But violation of a defendant's right to be present at trial is subject to harmless error, *see Rushen v. Spain*, 464 U.S. 114, 119 (1983), as was the case here, where all that was left at sentencing was pronouncement of sentence, and the trial judge issued an order the next day to correct orders it said were "e-filed incorrectly."  Doc. No. 1, at 13.

[7] On direct appeal, the State pointed out that, after the trial court changed the sentences to be consecutive, "Windham made no objection to the change in the manner in which his sentence was to be served, indicating that he failed to preserve for review his claim that really amounts to some sort of due process violation." Doc. No. 17-8, at 37.  The State alternatively argued that, if necessary, the Court of Appeals could remand for clarification whether the sentences

Windham nor the Court of Criminal Appeals specifically mentioned a challenge to the sentence based on federal law.  Doc. Nos. 17-7, 17-8, 17-9, 17-10.  A violation of state law is not a ground for federal habeas relief.  *See* 28 U.S.C. § 2254.  To the extent Windham is raising a claim based on federal law, he did not raise it in state court, therefore the claim is unexhausted. State law precludes Windham from returning to state court to litigate it, and he offers no excuse for his procedural default of the claim.  *See Coleman*, 501 U.S. at 729 (1991); *Henderson*, 353 F.3d at 891-92. The Alabama state court decision regarding Windham's sentence was not contrary to or an unreasonable application of clearly established federal law, as determined by the United States Supreme Court.  *See* 28 U.S.C. 2254(d)(1).   In addition, the Alabama state court decision was not an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2).

## B. Claim 4—Removal of Prospective Juror

In Claim 4, Windham argues the trial court erroneously removed a prospective juror without just cause.  Doc. No. 1, at 23.  Respondents agree this claim is properly before the court.  Doc. No. 17, at 16.  The prospective juror's ex-son-in-law accused her nephew and "'family members'" of molesting the juror's granddaughter.  Doc. No. 17-10, at 8 (quoting the trial transcript).  The prospective juror stated her nephew was not arrested or criminally

---

were intended to be served concurrently or consecutively.  *Id.* at 39.  In reply, Windham did not raise the federal arguments he now raises, such as allocution and right to be present.  He argued that nothing in Ala. R. Crim. P. 24 suggests it was intended to work to a defendant's detriment by allowing a court to change concurrent sentences to be consecutive, but rather that Rule 24 was intended to work to a defendant's benefit.  Doc. No. 17-9, at 10-13.

charged, but the parties "'were going to trial for custody.'"  *Id.* (quoting the trial transcript).

The following colloquy then took place:

> PROSPECTIVE JUROR: They determined that the child was lying.
> THE COURT: With all of that going on, do you think that would be a problem with you serving on this case, or could you be fair to both sides?
> PROSPECTIVE JUROR:  I don't think so. Not really.  I just needed to let y'all know.
> THE COURT:  Right.  That's why it was asked.  That's important for us to know.  All right. Any questions from the State?
> [Prosecutor]: One thing you mentioned, when I asked you the question about the ages of the children, you said—you know, I asked would you discount the testimony of children.
> PROSPECTIVE JUROR; Right.
> [Prosecutor]: And you indicated that you had a problem with that, with the ages of the children.
> PROSPECTIVE JUROR: Well, yeah. Because, the age of that child, she was like, six.
> [Prosecutor]: So, you would connect this kind of to—
> PROSPECTIVE JUROR: Well, no. But I just know that children don't always tell the truth.  They can, and most times they do, but they don't always.
> THE COURT: Anything, [Defense counsel]?
> [Defense counsel]: No, sir.
> THE COURT: Okay. Thanks. You can be on break. Thank you for your honesty.

*Id.* at 9-10 (quoting the trial transcript). The trial court indicated it would remove the prospective juror for cause because she could not serve fairly.  Defense counsel objected and said the prospective juror was "'pretty adamant in her answers'" but counsel said the juror "'did say, at the end of everything, she would listen to the evidence and would not be biased toward either side.'"  *Id.* at 10 (quoting the trial transcript).  The trial court struck the prospecting juror for cause, stating:

> "She had two different family members, unrelated child molestation situations. She did also indicate, for the record, during voir dire by the

attorneys—that's not part of the record—essentially, that she would not believe the child's testimony.

"And so, for all those circumstances, as well as my judging her response and her demeanor, I don't think she meets the threshold to serve on this case."

*Id.* (quoting the trial transcript).

The Court of Criminal Appeals affirmed, stating "the potential juror indicated a clear bias against young children's claims of sexual abuse.  This was based on her own bad experience with a grandchild who was determined to have lied about sexual abuse by the potential juror's family."   *Id.* at 10. After reviewing applicable law, including that providing for removal of a juror whose opinion is "so fixed  . . . that it would bias the verdict a juror would be required to render," *id.* at 11 (quotation marks and citations omitted), the Court of Criminal Appeals held:

> In this case, the trial court stated that part of its decision was based on the juror's demeanor, as well as her statements. Her bias directly dealt with the circumstances of this case and would most likely have caused her to unfairly discount the victims' testimony.  Thus, the trial court did not abuse its discretion by removing her from the panel.

*Id.* at 12.

A defendant has a right under the Sixth and Fourteenth Amendments to be tried by an impartial jury.  *Ross v. Oklahoma*, 487 U.S. 81, 85 (1988).  A prospective juror whose views "would prevent or substantially impair the performance of duties as a juror" can be excused for cause.  *Wainwright v. Witt*, 469 U.S. 412, 424 (1985) (quotation marks omitted); *Irvin v. Dowd*, 366 U.S. 717, 723 (1961).  The inquiry is "one of historical fact: did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed."

*Patton v. Yount*, 467 U.S. 1025, 1036 (1984); *see also id.* at 1037 n.12 (explaining the difference between the questions of fact and law in determining whether a juror should be excused for cause).   The trial judge's determinations of demeanor and credibility are entitled to deference because the judge is in the best position to assess them.  *See id.* at 1038; *Wainwright*, 469 U.S. at 425-26, 428; *Uttecht v. Brown*, 551 U.S. 1, 9 (2007).   On federal habeas review the state court determination of juror impartiality is entitled to special deference, and facts are entitled to a presumption of correctness that a petitioner can rebut with clear and convincing evidence.  *Uttecht*, 551 U.S. at 10; *Patton*, 467 U.S. at 1037 n.12; 28 U.S.C. § 2254(e)(1).

Here, Windham argues the Alabama court mischaracterized the prospective juror's statements, and Windham relies on the prospective juror's statements that she could be fair. Doc. No. 22, at 5-9.   The state court did consider the prospective juror's statements, however, and Windham points to no evidence to rebut clearly and convincingly the state court's finding about the prospective juror's credibility and demeanor. The prospective juror gave conflicting statements about her ability to believe testimony of children.   Giving due deference to the state court's credibility finding, this court concludes that Windham does not rebut the presumption of correctness given to state court factual findings, and the Alabama state court decision was not an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  *See* 28 U.S.C. § 2254(d)(2), (e)(1). The decision by the Alabama state court regarding the prospective juror's inability to serve was not contrary to clearly established federal law regarding juror impartiality, as

determined by the United States Supreme Court, or an unreasonable application of relevant law.  *See* 28 U.S.C. 2254(d)(1).  This claim is therefore due to be dismissed.

### C. Windham's Remaining Claims Fail on the Merits

Windham argues his lawyer should have argued on appeal that the prosecutor failed to disclose evidence favorable to Windham and make available to Windham a copy of the forensic video, and counsel should have presented it; that Windham's conviction was based on evidence obtained through an unreasonable search and seizure; that counsel failed to object to consolidation of charges for trial; that counsel failed to challenge admission of Rule 404(b) evidence that Windham raped one of the victims; that counsel failed to call Dr. Mark J. McDonald as a witness; that counsel failed to call Nurse Michelle Powell as a witness; that counsel failed to call Ashley Skinner as a witness and to request videos of Skinner's interview of the victims; that counsel failed to protect Windham from attacks on his character and from irrelevant, damaging testimony; that counsel failed to object when the trial court prematurely charged the jury; that counsel failed to file motion for preliminary hearing and labored under a conflict of interest; and that counsel failed to conduct a pretrial investigation into the victims' school records and failed to call witnesses to testify about incidents at school that undermined their statements against him. Doc. Nos. 1, 11. Except for his claim about particular school records, these claims are substantially the same as those Windham raised in his Rule 32 petition.

On direct appeal, the Alabama Court of Criminal Appeals recounted the evidence presented at trial, which will be only briefly summarized here.  Doc. No. 17-10.  The jury heard testimony from S.F., Windham's stepdaughter who was eight or nine years old at the

time of the charged crimes and ten years old at the trial, and from her sister M.F., Windham's stepdaughter who was six years old at the time of the charged crimes and seven at trial. *Id.* at 1-5. The girls testified to separate occasions when Windham moved them around on his lap while watching pornography, and S.F. said she "'felt something poking [her] up under [her] bottom,'" and M.F. said she "'felt something hard up under [her.]'" *Id.* at 3, 5 (quoting the trial transcript). S.F. testified that Windham entered her bedroom when she "should have been asleep so she pretended to sleep," Windham "touched her private part under her nightgown and underwear," and she pretended to wake up and she scared him. *Id.* at 3. S.F. testified to other incidents and bad acts involving Windham. *Id.* at 3-5. M.F. testified that Windham touched her private part under her clothes while they were alone in the living room. *Id.* at 5. An investigator and a state official testified about medical examinations and interviews of the two girls. *Id.* at 5-6. The investigator testified about Windham's interview with law enforcement, and the jury viewed Windham's videotaped interview. *Id.* at 6. The girls' maternal great-grandmother testified for the defense, as did Misty Windham, who is Windham's wife and the girls' mother. *Id.* at 7. Misty Windham "stated that during the custody hearing M.F pulled her mother's and father's hands together." *Id.* The great-grandmother testified, among other things, that after Windham was arrested, S.F. asked if she thought the victims' mother and their biological father would get back into a relationship, and the great-grandmother said she instructed the victims to inform her if anyone touched their private parts. *Id.* Windham testified in his own defense. *Id.* Windham's neighbor testified for the defense. Doc. No. 17-6, at 74. Misty Windham's own mother was called as a rebuttal witness. Doc. No. 17-6, at 82-85.

Windham challenged the sufficiency of the evidence as to one of the victims, S.F., and the Court of Criminal Appeals held there was sufficient evidence to uphold the verdicts. Doc. No. 17-10, at 14.

The postconviction trial court summarily dismissed Windham's petition under Alabama Rule of Criminal Procedure 32.7(d)[8] because it determined that the petition "is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under Rule 32 and that no purpose would be served by any fu[rth]er proceedings." Doc. No. 17-18, at 3. Regarding Windham's Claims 2, 7, 8, and 9 in his § 2254 petition that evidence from medical examinations and interviews with the victims would have shown the victims did not have physical trauma, the state court ruled "the jury was aware through other testimony and evidence of the results of the medical examinations. Therefore, trial counsel was not ineffective by failing to introduce the evidence and testimony that the defendant now claims as it would have been cumulative." *Id.* at 2. The state court addressed the evidence connected to the Child Advocacy Center, stating, "[i]t appears that his claim revolves around a factual dispute in the testimony of witnesses that the jury determined adverse to

---

[8] Regarding summary dismissals of Rule 32 petitions, a federal court has explained:

> [I]f a state court dismissed a claim under Rule 32.7(d), on the grounds that the petitioner either failed to state a claim upon which relief could be granted, or failed to state a material issue of fact or law that would entitle the petitioner to relief, such a ruling would constitute a ruling on the merits that the petitioner failed to meet his burden under Rule 32.3 to either plead or prove by a preponderance of the evidence those facts that would entitle him to relief. Such rulings can occur when the state court finds that a post-conviction petitioner is not entitled to relief, even if the facts underlying his claim are presumed to be true, or because the petitioner failed to present the evidence supporting his claim at an evidentiary hearing. Such dismissals are adjudications on the merits of a claim, and are, for that reason, subject to review in federal court under 28 U.S.C. § 2254(d).

*James v. Culliver*, No. CV-10-S-2929S, 2014 WL 4926178, at *13 (N.D. Ala. Sept. 30, 2014) (discussing *Borden v. Allen*, 646 F.3d 785, 812-13 (11th Cir. 2011)).

him. All evidence that was favorable to him or that was exculpatory in nature was presented to the jury." *Id.*

The postconviction trial court broadly addressed Windham's § 2254 Claims 3, 5, 6, 10, 11, 12, and 13, which criticized officers' acts, the evidence against him, counsel's failure to challenge it, counsel's failure to call witnesses and introduce favorable evidence, counsel's failure to object to consolidation and file other motions related to trial and counsel's representation.  It ruled:

> He lists a litany of inconsistencies and contradictory statements that were presented to the jury. All of these matters were factual disputes decided adverse to him by the jury. Further, the judgment of the Court of Criminal Appeals outlines many of the same matters but concludes that sufficient evidence was presented to support the verdicts. . . . He lists of number of objections to trial counsel's performance, including not objecting to consolidation, not asking for a continuance and not calling certain witnesses. All of the matters he outlines are within a trial attorney's responsibility to develop strategy and tactics during trial.  A trial attorney is not required to make frivolous and/or unnecessary objections.  These claims are conclusory in nature and in no way fell below the standard for constitutionally sufficient legal representation in a serious criminal case.

*Id.* at 2-3.

Windham's claims focus on counsel's performance, and to demonstrate a claim of ineffective assistance, a petitioner must show that, despite a strong presumption that counsel performed reasonably, counsel performed "below an objective standard of reasonableness," and that the petitioner was prejudiced by the deficiency. *See Strickland v. Washington*, 466 U.S. 668, 687-91, 694 (1984).  Prejudice means "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  In addition, this federal court's § 2254 review under

*Strickland* is another step removed from the original analysis, or as the Supreme Court puts it, "doubly deferential." *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013) (quotation marks and citation omitted); *Tharpe v. Warden*, 834 F.3d 1323, 1338 (11th Cir. 2016).  This court has carefully reviewed the record and concludes that Windham has not rebutted by clear and convincing evidence the presumption of correctness given to the Alabama state court determinations of fact; he has not shown the state court rulings in his case were an unreasonable application of *Strickland* or any other federal law as determined by the United States Supreme Court; and he has not shown the decisions were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d).  He is, therefore, not entitled to habeas relief on any of these grounds.

## V. NO EVIDENTIARY HEARING IS NEEDED

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citation omitted).  The Court is not required hold an evidentiary hearing on Windham's claims because "the record refutes the applicant's factual allegations or otherwise precludes habeas relief." *Id.*

## VI. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for habeas corpus relief filed by Petitioner James Roscoe Windham be DENIED and DISMISSED with prejudice.

It is further

ORDERED that on or before August 28, 2017, the parties may file an objection to the Recommendation. Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a de novo determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities*, Inc., 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 14th day of August, 2017.


/s/ Wallace Capel, Jr
CHIEF UNITED STATES MAGISTRATE JUDGE